CITIZENS FIRST NATIONAL BANK OF RIDGEWOOD, A NATIONAL BANKING CORPORATION, PLAINTIFF, v. RICHARD GRULL AND DIANNE GRULL, HIS WIFE, AND MIDLAND PARK LUMBER & SUPPLY CO., INC., A NEW JERSEY CORPORATION, DEFENDANTS.

Superior Court of New Jersey
Chancery Division

Decided February 20, 1973.

564

*Mr. John S. Harrison,* attorney for plaintiff Citizens First National Bank of Ridgewood.

*Mr. Edward F. Merrey, Jr.,* for defendant Midland Park Lumber & Supply Co., Inc. (*Messrs. Merrey & Merrey,* attorneys).

*Mr. Robert F. Henn* for defendant Dianne Grull (*Messrs. Weber, Muth & Weber,* attorneys).

TRAUTWEIN, J. S. C. This matter came on in the form of a motion by a junior encumbrancer, named as a defendant in a mortgage foreclosure suit, seeking an order directing the issuance of an *alias* writ of execution pursuant to the provisions of *R.* 4:64-4.

The court has considered the pleadings, the affidavits, the briefs and oral argument and makes the following findings of fact (all uncontroverted):

On January 11, 1968 defendants Richard Grull and Dianne Grull, husband and wife, executed a mortgage in favor of Citizens First National Bank of Ridgewood (hereinafter "bank") covering premises located in Allendale, New Jersey, which they owned as tenants by the entirety. In May 1970, the bank filed a complaint in foreclosure. Midland Park Lumber and Supply Co. (hereinafter "Midland") was made a party defendant by virtue of a judgment obtained by it against Richard Grull on October 17, 1969 in the amount of $3,574.32.

On August 3, 1970 a final judgment of foreclosure was entered in favor of the bank on its mortgage for $19,535.77. Subsequently, execution was issued to the Sheriff of Ber-

gen County to satisfy the amount due on said mortgage. Thereafter an agreement was reached between the bank and the Grulls whereby the bank agreed to accept periodic payments on account of its judgment and the mortgage. Pursuant to this agreement the sheriff was instructed by the bank not to proceed with the sale and to return the writ of execution to the court unsatisfied.

Defendants Grull failed to make payments as agreed and the bank obtained the issuance of an *alias* writ of execution. The premises were advertised for sale but thereafter adjournments were requested and granted by the sheriff. On April 19, 1972 the bank assigned its judgment to Joseph F. Grull and Velma H. Grull, the parents of defendant Richard Grull, for the sum of $17,400. On October 30, 1972 the *alias* writ of execution was returned unsatisfied to the court by the sheriff pursuant to instructions from the assignees (parents of Richard Grull) of the bank's judgment. At this juncture there is no action pending by the assignees to enforce the judgment by proceeding with the sale.

Defendant Midland now seeks an order for the issuance of an *alias* writ of execution directing the sheriff to sell the premises. In support of this motion Midland relies on *R.* 4:64–4, the mortgage foreclosure abandonment rule.

This rule is a carry-over from the practice under the former Chancery rules. Research discloses that the earliest Chancery rule was promulgated in April 1841 and amended in 1868. After the revision of 1910 this rule, *Chancery Rule* 28, provided:

When the complainant, in any bill filed to foreclose a mortgage, makes prior or subsequent encumbrancers parties to said bill, and they come in and answer, and the complainant then for four months neglects or refuses to proceed, the said defendants, or any of them, may take an order upon the complainant to show cause at any time, on ten days notice, why the said defendant or defendants shall not be allowed to proceed with the said cause to decree and execution in his name; and unless good cause being shown to the contrary, an order may be made that the said defendant or defendants shall be allowed so to proceed with the suit, and the complainant shall not be

allowed his costs. [*Kocher, Pleading and Practice in the Court of Chancery of New Jersey* 583 (1913)]

During the revision of 1917, *Chancery Rule* 28 was renumbered to 191 and entitled, "In a foreclosure a defendant encumbrancer may be allowed to proceed in the suit if the complainant delays four months."

The only change in the substance of the rule from the 1910 revision was the elimination of a ten-day requirement of notice to the complainant in the foreclosure suit. The revised rule required that the defendants take an order "on notice." 2 *Kocher & Trier, New Jersey Chancery Practice and Precedents,* 1608–09 (1924). (See tables indicating source rule, *Id.* at 1672–74).

*R.* 4:64–4 in its present form, "Abandonment of Action by Plaintiff; Right of Defendants to Proceed", provides:

> If the plaintiff makes prior or subsequent encumbrancers parties to the action to foreclose a mortgage, and they answer, and the plaintiff neglects or refuses to proceed, the defendants, or any of them, make application to the court for an order permitting them to proceed with the action to judgments and execution. Plaintiff by such order shall not be allowed his costs.

There are no reported decisions involving the application of the abandonment rule since its adoption as part of the court rules in 1947. However, there are a few decisions involving the former Chancery rule which set forth guidelines for its application.

In *Young v. Young,* 17 *N. J. Eq.* 161 (Ch. 1864), plaintiff filed a complaint for the foreclosure of a mortgage and joined other encumbrancers as parties. Plaintiff did not proceed with the suit and subsequently a defendant, who had answered, sought an order permitting him to proceed under the abandonment rule, then *Chancery Rule* XIV, § 9.

Thereafter, this defendant encumbrancer, Wells, proceeded with the suit and obtained a decree *pro confesso* against the mortgagor who had failed to answer. The mortgagor then moved to vacate the judgment and dismiss the complaint

on the ground that the mortgagor had earlier paid the amount due and costs to plaintiff and had received a stipulation of dismissal from plaintiff's attorney. He also offered to pay Wells, the additional encumbrancer defendant, the amount due on his mortgage but not his costs. Wells rejected the offer and obtained the order granting him permission to proceed with the suit.

The court denied the mortgagor's motion to vacate the judgment and held that under the abandonment rule an additional encumbrancer who is joined as a defendant in a foreclosure suit may be allowed to proceed with the suit although the debt due to plaintiff mortgagee had been satisfied and the plaintiff had agreed not to prosecute the suit any further. *Id.* at 162; *Anonymous, 8 N. J. Eq.* 174 (Ch. 1849). As regards the underlying policy of the abandonment rule, the court noted:

But the design and operation of the rule is to prevent any arrangement between the complainant and the mortgagor, operating to delay or defeat the suit to the prejudice of other encumbrancers, who have appeared and answered. Prior to the adoption of the rule, if the progress of the suit was delayed or arrested by any arrangement between the complainant and the mortgagor, *the only remedy of the other encumbrancers who made defendants, would have been to dismiss the complainant's bill, and institute new proceedings in their own name. To avoid this inconvenience and delay,* whenever a complainant from any cause refuses to proceed, the rule authorizes the encumbrancer who has answered, to proceed with the cause to decree and execution in the name of the complaint. [17 *N. J. Eq.* at 162; emphasis added]

In discussing the application of this rule, the court further declared:

It might seem at first view, where a complainant refuses further to prosecute his claim, that the fair presumption is that the claim is satisfied, or the right to prosecute waived, and before another party should be permitted to prosecute the suit, the defendant should have an opportunity of showing cause against it. But the answer is that a payment of the complainant's demand, or a stipulation by him not to prosecute the suit, is no objection to the prosecution of the suit by another encumbrancer for his own benefit. *If in the*

*further progress of the suit, any surprise is occasioned or injustice done to the mortgager, that would afford distinct ground for relief. But there is here no complaint of surprise or wrong.* [163; emphasis added]

*Coulston v. Coulston,* 37 *N. J. Eq.* 396 (Ch. 1883), involved the procedure to be followed by a party seeking the benefit of the abandonment rule. In *Coulston* plaintiff filed a complaint in foreclosure and thereafter an additional defendant encumbrancer, Hollinshead, answered and also established the priority of his mortgage over the plaintiff's. Defendant Hollinshead then proceeded to conduct the suit and drew and obtained the judgment. Plaintiff then moved to vacate the judgment. The court ruled that plaintiff was entitled to control and conduct the suit despite Hollinshead's priority. *Id.* at 396.

In this connection the court, referring to the plaintiff, stated:

He was *magister litis* and could not have been deprived of that character, except under the rule for his refusal or neglect to proceed with the suit. If, after the decision, he had unduly delayed entering the decree, the court on the defendant's application, would have directed him to draw the decree and present it to be settled or signed, and had he not complied with the direction, it might have ordered the defendant's solicitor to draw it * * *. [at 397]

■ Applying these principles to the case at bar it is clear that Midland's motion for an *alias* writ of execution is improper at this juncture. Under the *Coulston* decision a defendant seeking to avail himself of the abandonment rule must first seek permission to continue the suit before seeking affirmative remedies or otherwise becoming *magister litis* of the suit.

■ As previously noted, *R.* 4:64–4 provides that a defendant such as Midland "may make application to the court for an order permitting them to proceed with the action to judgment and execution." It appears that this rule is discretionary in nature. This construction of the abandonment rule

comports with the plain meaning of the language used therein and the prior construction of this rule in its earlier form. *Young, supra,* 17 *N. J. Eq.* at 163.

 The purpose of the abandonment rule was to prevent arrangements between plaintiffs in foreclosure suits and mortgagors which would result in inconvenience, delay and prejudice to the other encumbrancers joined as additional defendants and who had answered. Prior to this adoption of the abandonment rule if plaintiff and mortgagor reached an agreement which resulted in a delay or abandonment of the proceedings, the only alternative remedy of an additional defendant encumbrancer was to institute new proceedings which, of course, constituted inconvenience, delay and prejudice. *Young, supra,* at 162.

However, in a situation such as that presented in the present case sub judice where the additional defendant encumbrancer in the foreclosure action has already attained the status of a judgment creditor, there is no inconvenience, delay or resulting prejudice by refusing to allow him to proceed with the suit to execution and sale, as he can seek execution on the husband's interest in the estate immediately without instituting any further proceedings.

 As previously noted, defendants, the Grulls, own the premises as tenants by the entirety. Under well established principles, defendant Midland, by virtue of the judgment it has against the husband, is entitled as a levying creditor to sell the debtor spouse's one-half interest in the life estate for the joint lives as well as the debtor spouse's right of survivorship. *King v. Greene,* 30 *N. J.* 395, 412–413 (1959); *Dvorken v. Barret,* 100 *N. J. Super.* 306, 309 (App. Div. 1968), aff'd 53 *N. J.* 20 (1968). The levying creditor may not compel a partition of the fee by sale or otherwise which would destroy the wife's common law right of survivorship. *Dvorken,* at 309. On the other hand, if defendant Midland is permitted to proceed with the suit to execution and the sale of the premises, then the wife's right of survivorship will be destroyed as a tenancy by the entirety cannot exist

in the surplus funds. *Fort Lee S. & L. Ass'n. v. LiButti,* 106 *N. J. Super.* 211, 214 (App. Div. 1969), rev'd, 55 *N. J.* 532 (1970).

As Judge Carton stated in *Fort Lee,* in his dissenting opinion adopted by the Supreme Court, both husband and wife as mortgagors executing a mortgage must understand and consent that their respective interests may be cut off by a foreclosure and sale of the realty in the event of a default. (At 217).

However, the facts presented here are readily distinguishable in that here a judgment creditor of the *husband only* seeks to proceed with a sale of the realty and cut off the wife's interest. Certainly the wife cannot be deemed to have understood or consented to such act by a creditor of her husband only. In this regard it must be noted that under *R.* 1:13–8, "The priorities of parties' liens and encumbrances are fixed and determined as of the date of the commencement of the action, unless the parties otherwise agree or it is otherwise adjudicated in the action or in any other action." The extent of Midland's encumbrance is a lien on the husband's interest in the estate. To permit Midland to proceed with this action to execution and sale would enable Midland as a levying creditor to destroy the wife's right of survivorship and would contravene the policy considerations underlying *R.* 1:13–8. Midland as a levying creditor of the husband only is indirectly attempting, through *R.* 4:64–4, to destroy the wife's right of survivorship — a result which they may not accomplish directly. *Dvorken v. Barret, supra,* 100 100 *N. J. Super.* at 309.

Therefore where, as here, the continuation of a mortgage foreclosure suit to execution and sale results in an injustice and deprivation of the vested right of a mortgagor a distinct ground for relief is present and this defendant will not be allowed to proceed with the suit. *Young, supra,* 17 *N. J. Eq.* at 163.

Midland, a junior encumbrancer, should not be permitted to employ a rule of court to markedly enhance the dollar

value of its lien over that which it held at the commencement of the suit to the detriment of one of the defendants. Moreover, the court was advised at oral argument in response to questions it propounded of counsel that defendants Richard and Dianne Grull were separated and a matrimonial action was in the offing The parents of Richard are assignees of plaintiff's mortgage. Their abandonment of the sheriff's sale is, to a point, understandable and legally defensible, but standing mute while Midland proceeds to the detriment of their estranged daughter-in-law, while also understandable, is not legally defensible.

The motion is accordingly denied.